**NOT FOR PUBLICATION**

# UNITED STATE DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Maria Jose Carrascosa,                      : | |
|           Petitioner,            : | |
|                               : | Civil Action No.  07-0355 (DRD) |
| v.                                  : | |
|                                  : | **OPINION** |
| Leo P. McGuire, Sheriff, Bergen County,    : | |
|           New Jersey,            : | |
|                   Respondent.      : | |
|                                  : | |

**Appearances by:**

Mark S. Carter, Esq.
79 Main Street
Hackensack, NJ 07601

Alan S. Lewis, Esq.
Michael Shapiro, Esq.
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005

        Attorneys for the Petitioner, Maria Jose Carrascosa

Danielle Pasquale, Esq.
County of Bergen
Hackensack, NJ 07601

        Attorney for the Respondent, Leo P. McGuire, Sheriff, Bergen County

Peter Van Aulen, Esq.
Law Offices of Peter Van Aulen
50 Market Street
Saddle Brook, NJ 07663

        Attorney for Intervenor, Peter W. Innes

Carol Novey Catuogno, Esq.
AnnMarie Cozzi, Esq.
Office of the Bergen County Prosecutor
Bergen County Justice Center
Hackensack, New Jersey 07601


**DEBEVOISE, United States Senior District Judge**

The matter comes before the Court on the Petition of Maria Jose Carrascosa ("Carrascosa") for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254(b)(1), through which she seeks to end and enjoin her detention in the Bergen County, New Jersey jail by Sheriff Leo P. McGuire. She has been held there since November 21, 2006 for her failure to abide by orders of the New Jersey Superior Court arising out of contempt proceedings and an indictment. Carrascosa alleges that she is being detained in violation of United States treaty obligations under the Hague convention and United States statutes which implement the treaty.

## BACKGROUND

Peter Innes ("Innes"), a citizen of the United States who was living in New Jersey, and Maria Jose Carrascosa, a citizen of Spain who was continuously living in the United States from 1992, were married in a Catholic Church ceremony in Spain on March 20, 1999. A daughter, Victoria Solenne Innes, was born to them on April 17, 2000 in Secaucus, New Jersey and has dual citizenship in Spain and the United States because of the citizenship of her parents. Innes and Carrascosa separated in early 2004.

On October 8, 2004, Carrascosa and Innes, through their attorneys, signed an agreement concerning parenting time, parenting restrictions, and appointment of a parenting coordinator. The

parties did not seek a court order to support the parenting agreement. The agreement, among other things, specifically prohibited either party from "traveling outside of the United States with Victoria Solenne without the written permission of the other party." To enforce that prohibition, the agreement further specified that "Victoria Solenne's United States and Spanish passports shall be held in trust by Mitchell A. Liebowitz, Esq." and that neither party "may travel outside of a radius of 90 miles from Ft. Lee, New Jersey with Victoria Solenne without the written permission of the other party."

On December 10, 2004, Innes filed an action in New Jersey, in which he sought a divorce from Carrascosa, charging her with "extreme cruelty towards [Innes] commencing in the beginning of the marriage." As part of the judgment, Innes sought, among other things, an award of "joint legal custody of [Victoria Solenne]." Innes's action was followed on December 15, 2004 by Carrascosa's filing of an action in Spain, in which she sought civil recognition of the nullification of her marriage from Innes and custody of Victoria Solenne.[1] Thereafter, on January 12, 2005, Carrascosa removed Victoria Solenne to Spain without the written permission, or knowledge, of Innes.

Through her New Jersey attorney on January 28, 2005, Carrascosa filed with the New Jersey Superior Court, a notice of appearance in the divorce action instituted by Innes on December 10th.

_____

[1]In his oral argument, counsel for Carrascosa repeated the representations in her initial papers that she started proceedings in the Spanish Ecclesiastical Tribunal in May 2004, i.e. before Innes commenced divorce proceedings in New Jersey. However, in the November 11, 2005 opinion of the Spanish Court No. 9 it is stated that "[i]n the petition for matrimonial annulment filed by [Carrascosa] before the Ecclesiastical Tribunal of the Valencia Archbishopric on December 15, 2005 . . ." (Emphasis added). Thus, there were no prior proceedings which Carrascosa's attorney contend precluded the New Jersey Courts from proceeding simultaneously under N.J.S.A. 2A:34-34 (now 2A:34-70). Even if Carrascosa had instituted an action for annulment in the Spanish Ecclesiastical Tribunal prior to Innes's filing for divorce, there is no evidence that it was "a court of another state exercising jurisdiction substantially in conformity with [2A:34-38, et seq.].

3

Her appearance, however, was limited to "[o]ther issues incidental to the proceeding - - jurisdiction only" noting that "if New Jersey assumes jurisdiction over this matter, we reserve the right to amend this notice of appearance and file a substantive answer to [Innes's] complaint for divorce." The notice specifies Carrascosa's residence as "1099 Abbott Boulevard, in the Borough of Fort Lee, County of Bergen."

Addressing Innes's December 2004 complaint and Carrascosa's January 2005 notice of appearance, on February 4, 2005, New Jersey Superior Court Judge George W. Parsons entered an order governing the proceeding and the parties, particularly:

> (3) THAT minor child, Victoria Solenne Innes, born April 17, 2000, shall be returned from Spain immediately;

> (4) THAT upon the child's return from Spain, the parties shall abide by the parenting plan agreement entered into by the parties on October 8, 2004;

Although Carrascosa appealed Judge Parsons's decision ordering return of the child, on March 14, 2005, the Appellate Division of the New Jersey court denied her appeal.

Despite numerous attempts "by telephone, facsimile and written mail," Judge Parsons was unable to speak with his Spanish counterpart. However, the representatives of the parties in Spain agreed that "there is no order prohibiting the return of the parties' daughter from Spain to the United States." Therefore, after considering the submissions and arguments of the parties, on March 22, 2005, Judge Parsons ordered, among other things:

> 2. THAT [Innes] is hereby granted temporary custody of the minor child, Victoria Solenne Innes;

> 3. THAT, as previously ordered by this Court on February 4, 2005, the minor child, Victoria Solenne Innes, shall be returned from Spain within three weeks of the date of the entry of this Order;

and

  4. THAT if [Carrascosa] does not return the child to [Innes] in New Jersey within three weeks of the date of the entry of this Order, a warrant shall automatically issue for the arrest of [Carrascosa]. Said warrant shall issue during the hours of 9 a.m. and 3 p.m. and [Carrascosa] shall be brought before the Honorable George W. Parsons, Jr.

On June 14, 2005, Innes filed an application with the Spanish Court seeking the immediate return of Victoria Solenne to New Jersey, her habitual residence in accordance with the terms of the Hague Convention's Civil Aspects of International Child Abduction and 41 U.S.C. § 11601 et seq., the International Child Abduction Remedies Act ("ICARA") and enforcement of the New Jersey Court's order. Innes's application noted that the New Jersey Superior Court not only denied Carrascosa's motion to stay pending a decision by the Spanish Court, but also imposed monetary sanctions on Carrascosa, awarded Innes custody of Victoria Solenne, and ordered Carrascosa to return her to the United States within three weeks of entry or face arrest.

In response to Innes's application, on June 24, 2005, the Spanish Court of the First Instance, No. 9 ("Spanish Court No. 9"), issued an order, without explanation, effective June 19, 2005 through April 17, 2018, Victoria Solenne's 18th birthday, which prohibited Victoria Solenne from leaving Spain.

Less than two weeks later, on July 6, 2005, the Spanish Court No. 9, ordered that "there is no place to order the restitution of Victoria Solenne Innes to the United States and her delivery to her father Peter William Innes." [Sic].

Based on the findings of the Spanish Court No. 9, on November 4, 2005 and apparently viewing the order of the Spanish Court No. 9 as a valid and binding order under the Hague Convention and ICARA, Judge Torack, who replaced Judge Parsons in the case before the Superior

5

Court of New Jersey, granted Carrascosa's motion for an interlocutory order which dismissed Innes's complaint as to custody, parenting support, and child support. In addition, Judge Torack's order vacated all prior orders relating to custody, parenting time, child support and arrest of Carrascosa, while retaining jurisdiction of property rights and financial issues in the matter in the event that the Spanish Court granted Carrascosa's petition for annulment of her marriage to Innes.

One week later, however, on November 11, 2005, upon Innes's appeal of the July 6, 2005 decision of the Spanish Court No. 9, that court reversed itself because the jurisdiction of the Spanish Courts "in matters related to matrimonial annulment" is limited to petitions "where both spouses have their habitual residence in Spain on the date of filing of the petition or where the plaintiff is Spanish and has his/her habitual residence in Spain."

The conclusion the Spanish Court drew from the documents presented to it was that the country of habitual residence of Innes, Carrascosa, and Victoria Solenne was the United States. Correspondingly, its decision was that, because of its "lack of international jurisdictional," the Court must refrain from "dealing with the petition for matrimonial annulment lodged by Mrs. [Carrascosa] against Mr. Peter William Innes."

On December 9, 2005, based on the reversal of the Spanish Court No. 9, Judge Torack reinstated the action in New Jersey Superior Court, ordering Carrascosa to return Victoria Solenne to New Jersey by December 22, 2005, or face sanctions, to permit telephone contact between Innes and Victoria Solenne, and to file a Case Information Statement ("CIS"). Further, he ordered both parties to submit to custody evaluations. Although Innes reported for the custody evaluation, Carrascosa did not, nor did she file the CIS.

In the meantime, in Spain, Carrascosa appealed the November 11, 2005 determination of the

6

Spanish Court No. 9.  In an opinion dated January 18, 2006, the Spanish  Appellate Court No. 10 ("Spanish Court No. 10") specifically found that the October 8, 2004 agreement between Carrascosa and Innes "does not expressly specify that the guardianship and custody of the minor is attributed to the mother," but, that the "assignment of custody [to the mother] is indeed implicitly stated in this document" while only visitation rights on alternate weekends are assigned to Innes.

Pointing to the transcript of the proceedings of the Spanish Court No. 9 court, Spanish Court No. 10 determined that Innes did not dispute "this assignment of maternal custody" and that "this is corroborated by the mother" who was "the person who had been at the child's side from the time she was born [as] her mother and the child had only been alone with her father when he exercised his visiting rights with the child on alternate weekends."  The Spanish Court No. 10, citing Article 5 of the Hague Convention, which provides that "the rights of custody shall include rights relating to the care of the child and, in particular, the right to determine the child's place of residence," determined that "[t]he care of the child was exercised by her mother and the right to decide on her residence was shared between both parents in the [October 8, 2004 agreement]."

Despite finding that Carrascosa breached the agreement when she removed Victoria Solenne, the Spanish Court No. 10 held that, in Spain, such an agreement was not binding because "it was an agreement limiting the fundamental rights contained in [the Spanish Constitution] that guarantees all Spanish citizens the right to freely choose their place of residence and the use of such expression in the agreement cannot be deemed valid" because it is "incompatibl[e] . . . with Spanish law regarding fundamental rights . . . and is justification for a refusal to return the child, as has been requested." Therefore, the Spanish Court No. 10 dismissed Innes's the appeal and reinstated the July 6, 2005 determination of the Spanish Court No. 9.

Because Carrascosa had not reported for her custody evaluation as ordered on December 9, 2005, Judge Torack, on February 1, 2006, in addition to setting a trial date of April 3, 2006, again ordered custody evaluations of the parties. Innes again reported for his custody evaluation, but Carrascosa failed to report, despite the fact that she was granted a video conferencing evaluation based on her claim of poor health.

At trial on April 5, 2006, the oral argument of the parties concerned the status of the litigation in New Jersey and Spain, as well as the status of the Hague Convention application. It was determined that the only litigation pending in Spain was Carrascosa's petition for nullification of the marriage and that no stay had been entered by the Spanish Court. Judge Torack scheduled a trial for April 24, 2006. It did not commence, however, until August 16.

During the course of the trial, Innes testified that during his marriage to Carrascosa the care and rearing of Victoria Solenne was "a shared responsibility. I worked in my office during the day, sometimes with Victoria. I leased an office downstairs in the building we lived in. I cared for her in the evenings while my wife typically would work on her at-home business. So it was certainly a shared responsibility."

According to Innes, after separation, Carrascosa initially permitted him daily contact with Victoria, but this rapidly diminished until they signed the October 8, 2004 agreement. Innes claimed that, through the agreement, he again was permitted a few weekend visits, but these terminated on November 4, 2004 when Carrascosa refused to let him see Victoria Solenne. Innes testified that he did not learn of Carrascosa's removal of Victoria Solenne to Spain until February 4, 2005.

Innes also testified that, although Judge Torack's February 1, 2006 order permitted him telephone contact with Victoria Solenne in Spain, he called daily at 1:00 p.m. (Eastern Time) for four

8

or five months but was never permitted to speak with his daughter. He stated that he stopped calling when he was served with an order temporarily restraining him from making the phone calls.

Regarding his relationship with Victoria Solenne, Innes testified that:

[w]e did everything together. We would watch videos. We would go shopping. We'd go for walks. We'd go down to, you know, the park and look at ducks. We did exactly what a father and a four year old daughter do. And we did it on a daily basis. . . . I want my child to have her mother and her father in her life. It's in the best interest of Victoria to have her mother and her father.

Reading from an evaluation of Victoria Solenne by a Spanish psychologist, Innes stated that the psychologist found "clear evidence of the child having been manipulated by the mother by means of attitude and utterances in order to create a negative image of the father, thereby favoring a rejection towards him. . . . We consider it in the child's best interest to maintain a relationship with both parents."

On the record, Judge Torack ruled that New Jersey has general personal jurisdiction over Carrascosa and that "New Jersey has jurisdiction over custody issues by virtue of statutory and case law."

On August 23, 2006, Judge Torack signed a Final Judgment of Divorce, dissolving the marriage between Innes and Carrascosa. Thereafter, Innes applied to the Spanish Court No. 9 to have Victoria Solenne's Spanish and American passports returned to him. On October 19, 2006, the Spanish court declined his request because his initial petition and his appeal were denied and because the Order of the New Jersey Court was not processed through the proper channels.

Carrascosa brought before Judge Torack a motion for reconsideration of his August 2006 decision, raising issues of comity and full faith and credit with respect for the Hague Convention decision of the Spanish Court. In the alternative, Carrascosa sought a stay. Judge Torack rejected

her conclusions and denied her motion.

The Bergen County Prosecutor's Office sought an arrest warrant for Carrascosa, asserting criminal charges based on violations of Judge Torack's orders. Carrascosa was arrested on November 31, 2006 in New York and waived extradition, voluntarily returning to New Jersey. Thereafter, on December 19, 2006, Carrascosa was indicted by a grand jury in Bergen County, New Jersey for her removal and retention of Victoria Solenne in Spain and for her failure to obey the orders of the court. She responded on December 21, 2006 by filing an application for emergent relief with the Appellate Division of the New Jersey Superior Court, seeking a stay and release from jail. The next day bail was set at $1 million, but, subsequently, on January 16, 2007, was reduced to $500 thousand.

Between December 26 and 27, 2006, Carrascosa filed both an amended application seeking release from jail, or setting reasonable bail, and another motion for emergent relief. Both were denied on December 29, 2006 by the Appellate Division of the New Jersey Superior Court, but full appeal of the civil matter was scheduled for argument on February 28, 2007.

## JURISDICTION

Carrascosa filed this action, pursuant to 28 U.S.C. § 2254, contending that her imprisonment for failing to obey the orders of the New Jersey Superior Court with respect to her daughter violates her rights under the Constitution, laws, and treaties of the United States. The Respondent Sheriff contends that the petition is barred by the provisions of 28 U.S.C. § 2265(b) that require an applicant for a writ of habeas corpus to exhaust the remedies available in the courts of the State. This Carrascosa obviously had not done, and there are available remedies in the State courts by way of appeal.

10

It might be of interest to explore whether, in the unusual circumstances alleged in this case, exhaustion might be excused: alleged violation of a treaty and statute of the United States; the great injury to a petitioner asserting rights under the treaty and statute were she to remain in the County jail pending the resolution of those rights; and leaving a young child in limbo without either parent during those years. Carrascosa's attorney argued persuasively that there is no effective remedy in the State courts. She would have to remain in jail pending resolution of the issues, which is an irreparable injury. The only way she could avoid the injury would be to give up what she contends are her rights at issue in this proceeding. However, it is unnecessary to explore these questions, because this Court has jurisdiction under 28 U.S.C. 2254(b)(2) which permits denial of a writ of habeas corpus on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

I have concluded that the Spanish Courts, which initially had jurisdiction under the Hague Convention, lost that jurisdiction when, on the Innes application to it, failed to implement the procedures mandated by the Hague Convention which would have lead to the return of Victoria Solenne to the United States and, instead, proceeded to rule upon the issue of custody and other issues relating to the welfare of the child. I have further concluded that the judgment of the Spanish (Appellate) Court No. 10 is not entitled to full faith and credit treatment to the extent it purports to rely on the Hague Convention, and, in the circumstances of this case, is not entitled to reciprocity on principles of comity. Diorinous v. Mezitis, 237 F.3d 133 (2nd Cir. 2001).

## DISCUSSION

Carrascosa argues that the New Jersey courts lack jurisdiction because the Spanish courts had already decided that Victoria Solenne was not to be returned to New Jersey. She contends that by

ordering the return of Victoria Solenne to New Jersey, the New Jersey courts violated the Hague Convention, which, as a federal treaty, is the law of the land, because they failed to respect the decisions of the Spanish Courts.

The Hague Convention provisions are designed to restore the "factual" status quo which is unilaterally altered when a parent abducts a child. It aims to protect the legal custody rights of the non-abducting parent. The Hague Convention is not to be used to settle custody disputes. "A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue." Hague Convention, Article 19. Pub. Notice 957, 51 Fed. Reg. 10494, 10505 (1986). The Hague Convention mandates the return of the child to . . . her circumstances prior to the abduction where one parent's removal of the child from a Contracting State has violated the custody rights of the other parent and, therefore, is wrongful. Hague Convention, Article 12. Article 12 states that '[w]here a child has been wrongfully removed . . . in terms of Article 3 . . . the authority concerned shall order the return of the child forthwith." Under Article 3 of the Hague Convention, removal is wrongful where:

a. It is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal . . . and

b. at the time of removal . . . those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal. . . .

Under Article 3, "rights of custody" may arise by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

**A. Habitual Residence Under the Hague Convention:** There is no dispute that Victoria

Solenne's place of habitual residence, prior to Carrascosa's removal of her to Spain, was the United States, in particular New Jersey. The New Jersey courts, as well as the Spanish courts No. 9 and No. 10, have recognized that fact and it is not disputed here. In fact, the Spanish Court No. 9 "disvirtued the affirmation of Ms. Carrascosa" and found that the child's "habitual residence was in the United States when it was produced the transfer to this locality." [Sic].

**B. Rights of Custody Under the Hague Convention**: Once the habitual residence is established, the next question is whether the removal of Victoria Solenne was wrongful under Article 3. The determination involves two inquiries: (1) whether the custody rights that Innes enjoyed were breached by the removal; and, (2) whether Innes was exercising those rights at the time. See Feder v. Feder, 63 F.3d 217 (3d Cir. 1995).

As noted, the purpose of the Hague Convention, as implemented by ICARA, is to return children to their country of habitual residence where any dispute over custody will be litigated. Journe v. Journe, 911 F. Supp. 43, (D.P.R. 1995). Therefore, under the Hague Convention, custody disputes are to be litigated in the child's country of habitual residence. The country of habitual residence for Victoria Solenne is the United States, particularly the state of New Jersey. Therefore, the Spanish courts departed from the requirements of the Hague Convention in not returning Victoria Solenne to New Jersey so that the custody issues between Innes and Carrascosa could be litigated there. They were not acting in accordance with the Hague Convention and, consequently, ICARA imposed no obligation on American courts to enforce their judgments.

"The only acceptable solution, in the absence of a ruling from a court in the country of habitual residence, is to liberally find 'exercise' whenever a parent with de jour custody rights keeps . . . any sort of regular contact with his . . . child." Friedrich v. Friedrich, 78 F.3d 1060, 1065 (6th Cir.

1996); Sealed Appellant v. Sealed Appellee, 394 F.3d 338 (5th Cir. 2004). Although Innes and Carrascosa signed a parenting agreement, it was not a "ruling from a court in the country of habitual residence." Id. (citation omitted). Therefore, under Friedrich, the appropriate standard is "any sort of regular contact with the child."

Without a doubt, Innes had regular contact with Victoria Solenne until the time he was prevented by Carrascosa from doing so. Prior to the separation of Innes and Carrascosa, they both had custody of Victoria and both spent considerable parenting time with her. After the separation, Innes continued regular contact with Victoria Solenne, exercising his custody rights in accordance with the October 8, 2004 agreement, until Carrascosa prevented him from doing so.

Therefore, it is apparent that the Spanish court erred in applying the custody rights standards. It is evident that Innes enjoyed custody rights under federal and New Jersey law and he was exercising his custody rights until the time that he was prevented from doing so by Carrascosa's removal of Victoria Solenne to Spain. The New Jersey courts were acting within their jurisdiction in ordering the return of Victoria Solenne to New Jersey and in imposing sanctions upon Carrascosa for failing to take steps to implement that order.

Further, under Friedrich, a person with valid custody rights cannot fail to exercise them under the Hague Convention "short of acts that constitute clear and unequivocal abandonment of the child." Friedrich, 78 F.3d at 1066. Once the court determines that the parent has exercised custody rights in any manner, the court must stop and order the return of the child. Id. Clearly Innes did not abandon Victoria Solenne. He spent regular parenting time with her prior to her removal and he sought joint legal custody in his divorce proceedings. After her removal, he took appropriate steps to have her returned to New Jersey so that he could resume his rights of custody.

14

**C.  Application of New Jersey Law**:  Under New Jersey's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), the New Jersey Superior Court, Family Division, had subject matter jurisdiction over international custody disputes concerning a child whose habitual residence was New Jersey.  See N.J.S.A. 2A:34-53; see also Ivaldi v. Ivaldi, 147 N.J. 190 (1996).  As noted earlier, the courts, including the Spanish courts, agree that Victoria Solenne's habitual place of residence was the United States, particularly New Jersey.  Accordingly, under New Jersey law, New Jersey courts have subject matter jurisdiction over international custody cases.

Additionally, New Jersey divorce laws prevent a party's removal of a minor child from the State of New Jersey without a court order or without consent of the other party.  See N.J.S.A. 9:2-1 et seq.

Here, the divorce action initiated by Innes on December 10, 2004, in which he also sought joint legal custody of Victoria Solenne, was correctly before the New Jersey court. There is no evidence that Carrascosa filed before Innes in Spain.  In fact, the November 11, 2005 transcription of the opinion of the Spanish Court No. 9 stated that "the petition for matrimonial annulment [was] filed by [Carrascosa] before the Ecclesiastic Tribunal of the Valencia Archbishopric on 15 December 2004."

In an attempt to recognize the interests of the Spanish courts, however, Judge Parsons's February 4, 2005 order stayed the New Jersey proceeding until he could talk with the Spanish courts. The Spanish courts failed to reciprocate and, thereafter, ignored order after order of the New Jersey Courts to return Victoria Solenne to New Jersey where custody issues would be decided.

**E.  The Spanish Court Ruling:** On its face, the January 18, 2005 Judgment of the Spanish Court No. 10 recites its departure from the Hague Convention.  It recites correctly that:

the purpose [of the Convention] is to secure the prompt return of children under 16 years of age wrongfully removed to or retained in any Contracting State and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting State.

The Spanish Court also correctly recited that:

[a]n unavailable case for its application is that the removal, in this case, of the minor, is considered illegal and for such purpose, Article 3 of the Convention presumes any removal as illegal when it is in breach of the <u>rights of custody attributed</u>, under the law of the State in which the child was habitually resident immediately before the removal or retention; and that these rights of custody would have been so exercised but for the removal or retention.  (Emphasis added).

The glaring departure of the Spanish Court from the mandate of the Hague Convention, recognized by it, was its total failure to determine Innes's rights of custody under New Jersey law -- the law of the state in which Victoria Solenne was habitually resident immediately before her removal.  The Court never mentioned the applicable New Jersey Child Custody Jurisdiction and Enforcement Act or the provisions of the New Jersey divorce law, applicable to Victoria Solenne in this case, forbidding removal of a minor child from New Jersey without court order or consent. It did not examine the custody rights of a New Jersey parent under New Jersey law.  It becomes abundantly evident that it was applying Spanish law when it construes the effect of the parties' agreement of October 8, 2004:

Therefore, when, or about, January 12, 2005, the mother brought her daughter to Spain, she breached the agreements.  However, in Spain such agreement could only be considered a letter of intent therefore no solution whatsoever could be imposed for such breach of contract, as it was an agreement limiting the fundamental rights contained in Article 19 of the Constitution that guarantees all Spanish citizens the right to freely choose their place of residence and the use of such expression in the agreement can not be deemed valid.  The incompatibility of this restrictive clause with Spanish law regarding fundamental rights, under the autonomous system of the Civil Procedure Act, implies grounds for a public litigation order and from the standpoint of Article 20 of the Convention, in justification for a refusal to return the child, as has been requested.

16

Apart from the inherent illogic of the Court's reasoning, there is a bald statement that the Court would apply Spanish law in total disregard of the law of New Jersey as required by the Hague Convention.

The failure of the Spanish courts constitutes nothing less than a complete disregard of the principles of international comity.  Because the legislative policy of New Jersey requires positive opposition to the removal from the state of native children, it is effective as against the demands of comity, particularly where the proposed comity is not reciprocated.  Fantony v. Fantony 36 N.J.Super. 375, (Ch.1955), modified on other grounds by 21 N.J. 525.

Because New Jersey law barred Carrascosa  from removing Victoria Solenne to Spain without a court order or the consent of Innes, the New Jersey court was acting within its jurisdiction in ordered the return of the child to New Jersey.  The Spanish court departed from the limited issue it was authorized to decide under the Hague Convention and undertook to resolve the wide range of issues involved in a custody dispute, in spite of the fact that the Hague Convention mandated that they ordered the return of Victoria Solenne to New Jersey.

Carrascosa's reliance on Diorinous v. Mezitis, 237 F.3d 133 (2d Cir. 2001) is misplaced, and the case  supports this Court's determination that it is the Spanish courts that have failed to support the Hague Convention and the principles of international comity.

In Diorinous , in denying Mezitis's ICARA petition for return of his children to the United States from their wrongful removal to Greece by their mother, the district court in New York held:

> Similarly, in this instance, the Greek courts adjudicating Dr. Mezitis' petition had jurisdiction under the Hague Convention, since the children were located in Greece when his petition was filed there.  The issued tried and decided in those proceedings - whether the children's residence in Greece was wrongful - is the one which Dr. Mezitis wishes to re-litigate here.  The parties are identical.  The final judgment of

the Greek Supreme Court, the highest court in Greece, after full litigation of the issue is entitled to full faith and credit in this proceeding, and I would in any event, as a matter of comity and res judicata, adopt its determination that the children were not wrongfully retained in Greece.

The issue before the Second Circuit was whether "section 4 of ICARA requires a federal or state court in the United States to accord full faith and credit to a Hague petition adjudication of another country." The Second Circuit found that "as a general matter, judgments rendered in a foreign nation are not entitled to the protection of full faith and credit," although American courts will normally accord deference to a foreign adjudication. Id. at 142 (citations omitted).

Carrascosa fails to consider that "comity prevails if [a] foreign judgment 'does not prejudice the rights of United States citizens or violate domestic public policy.'" Id. (citing Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 82 F.2d 709 (2nd Cir. 1987). "A particular case may disclose such defects as to make the particular judgment not entitled to recognition." Diorinous, 237 F.3d at 143 (citation omitted). That is the case here.

The Spanish courts found that Carrascosa had exclusive custody of the child and that Innes did not have custody because there was no court order granting him custody. In light of the Hague Convention provisions, federal law, and New Jersey law, this is clearly wrong. The Spanish courts also found that Innes was not exercising his custody at the time of her removal by Carrascosa to Spain because the parenting agreement gave him only visitation rights. This, too, in light of New Jersey law, federal law, and the Hague Convention is clearly wrong. In making these determinations, the Spanish Courts failed to apply the correct standard and, instead, made a determination regarding custody and not custody rights. Despite the fact that a court has the power to decide wrongly, a decision such as this cannot stand because, on its very face and applying the facts found by the

18

Spanish Court, the decision is outside of the terms of the Hague Convention. This is not simply judicial error to be corrected by appeal. It is a departure from jurisdiction conferred by the Hague Convention.

The Spanish Courts, not the New Jersey courts, violated the principals of international comity by failing even to attempt to apply New Jersey law and the order of the New Jersey courts and by applying Spanish law where the Convention mandated that it apply New Jersey law.

**E. The Child's Residence for the Last Two Years**: Carrascosa argues that because Victoria Solenne has resided in Spain for the last two years, the Hague Convention gives Spain the right to determine if she should be returned to New Jersey.

If a petitioner meets his burden of establishing the child's habitual residence and custody rights, the burden then shifts to the respondent opposing the return of the child to establish one of four narrowly construed affirmative defenses: (1) a grave risk that return would expose the child to physical or psychological harm, or place the child in an intolerable situation; (2) return of the child would violate the principles of human rights and fundamental freedoms of the requested state; (3) the proceeding was commence more than one year after the date of wrongful removal and the child is now settled in her new environment; (4) petitioner was not exercising custody right at the time of removal or had consented to, or acquiesced in, the removal. See Silvestri v. Oliva, 403 F. Supp. 2d 378 (D.N.J. 2005). These are questions that are not appropriately decided in the first instance in the proceeding.

## CONCLUSION

For the reasons cited above, Maria Jose Carrascosa's Petition for a Writ of Habeas Corpus,

19

pursuant to 28 U.S.C. § 2254(b)(1), and through which she seeks to end and enjoin her detention in

the Bergen County, New Jersey jail by Sheriff Leo P. McGuire, will be denied and dismissed with

prejudice.  An appropriate order follows.


/S/ Dickinson R. Debevoise

Dickinson R. Debevoise, U.S.S.D.J.


Dated: February 8, 2007