NOT FOR PUBLICATION

# UNITED STATE DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
Maria Jose Carrascosa,       :
    Petitioner,       :
                                           :    Civil Action No. 07-0355 (DRD)
v.       :
                                           :    **OPINION**
Leo P. McGuire, Sheriff, Bergen County,       :
    New Jersey,       :
        Respondent.       :
_____:

**Appearances by:**

Mark S. Carter, Esq.
79 Main Street
Hackensack, NJ 07601

Alan S. Lewis, Esq.
Michael Shapiro, Esq.
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005

    Attorneys for the Petitioner, Maria Jose Carrascosa

Danielle Pasquale, Esq.
County of Bergen
Hackensack, NJ 07601

    Attorney for the Respondent, Leo P. McGuire, Sheriff, Bergen County

Peter Van Aulen, Esq.
Law Offices of Peter Van Aulen
50 Market Street
Saddle Brook, NJ 07663

    Attorney for Intervenor, Peter W. Innes

Carol Novey Catuogno, Esq.
AnnMarie Cozzi, Esq.
Office of the Bergen County Prosecutor
Bergen County Justice Center
Hackensack, New Jersey 07601

  Attorney for Intervenor, the Bergen County Prosecutor's Office

Alan S. Pralgever, Esq.
Wolf, Block, Schorr and Solis-Cohen LLP
101 Eisenhower Parkway
Roseland, NJ 07068

Jerome J. Shestack, Esq.
Justine M. Kasznica, Esq.
Wolf, Block, Schorr and Solis-Cohen LLP
Philadelphia, Pa 19103-2097

  Attorneys for Amicus Curiae, Government of the Comunidad Valenciana Region, Spain


**DEBEVOISE, United States Senior District Judge**

  The matter comes before the Court on Petitioner Maria Carrascosa's ("Carrascosa") Motion for Reconsideration and Stay of the February 8, 2007 Order of the Court, which denied her petition for a Writ of Habeas Corpus wherein she sought to end and enjoin her detention in the Bergen County, New Jersey jail where she has been held since November 21, 2006 on contempt charges for her failure to abide by orders of the New Jersey Superior Court.  Although Carrascosa failed to file a supporting brief with her motion as required under Local Civil Rule 7.1, the Court accepted her subsequently filed Memorandum of Law in Support of the Motion on March 23, 2007.

  Additionally, the Government of the Comunidad Valenciana Region of Spain ("the Province of Valencia") sought, and was granted, permission to file a brief amicus curiae.  It asserted that it has an interest 1) in protecting the rights of its Spanish citizens, Carrascosa and Victoria Solenne, 2) in

matters implicating the Spanish judiciary, and 3) in ensuring that the goals and provisions of the Hague Convention are met and the principles of international comity are respected.

For the reasons below, Ms. Carrascosa's motion for reconsideration and stay of the Court's February 8, 2007 order is denied.

## **BACKGROUND**

The background of this case is set forth in detail in the Court's February 8, 2007 opinion denying her petition for writ of habeas corpus and need not be repeated here. It will suffice to say that Carrascosa was arrested and incarcerated in Bergen County, New Jersey, and she remains incarcerated there, for her failure to return her daughter, Victoria Solenne, in violation of orders of the State Courts of New Jersey. Carrascosa based her refusal to return Victoria Solenne on the decisions of the Spanish Courts which ordered that the child not be removed from Spain. The Court denied her habeas corpus petition, finding that the Spanish Courts erred and were in violation of the Hague Convention, thus justifying the refusal of the New Jersey Courts to honor their judgments.

Carrascosa asserts that the Spanish Courts' decisions not to order the return of Victoria Solenne are correct in that they relied on specific articles of the Hague Convention, Article 3B, Article 13B, and Article 20. See Declaration of Alan S. Lewis at ¶ 6, February 23, 2007. Article 3B makes removal "wrongful" only if "at the time of removal . . . [custody] rights were actually exercised." Article 13B is the defense that Victoria Solenne would suffer a "grave risk of harm" if she were to be returned to the United States. And, Article 20 is the defense that the return of Victoria Solenne would violate "fundamental principles of the requested state to protection of human rights and fundamental freedoms."

Essentially, Carrascosa argues that because the determinations of the Spanish Courts are

correct, the New Jersey Court orders are invalid and she cannot be in contempt for disregarding them.

This Court takes judicial notice of the thorough and well-reasoned decision of Judge Lyons of the New Jersey Superior Court, Appellate Division, in <u>Innes v. Carrascosa</u>, - - - A.2d - - -, 2007 WL 966976, *1 (Apr. 3, 2007), which contains a full exposition into relevant New Jersey State law and the provisions of the Hague Convention and their application to, and effect on, the instant case. We will note only the major points of Judge Lyons' holding that

- the New Jersey Superior Court, Family Part, had subject matter jurisdiction over the divorce action between Innes and Carrascosa, distribution of their property and issues of child custody concerning Victoria Solenne;

- the New Jersey Trial Court obtained jurisdiction over the matrimonial and custody issues before the Spanish Courts obtained jurisdiction;

- the New Jersey Trial Court was not required to defer to the Spanish ecclesiastical tribunal that presided over Carrascosa's application for annulment of her marriage to Innes;

- the Spanish Courts that considered Innes' application under the Hague Convention had the authority to determine only the habitual residence of Victoria Solenne;

- the Spanish Courts did not have the authority under the Hague Convention to determine issues of child custody concerning Victoria Solenne;

- the law of New Jersey governed the determination of the custody of Victoria Solenne;

- Carrascosa's removal of Victoria Solenne to Spain was wrongful;

- the Spanish Courts' determination that Carrascosa's removal of Victoria Solenne to Spain was not wrongful was not entitled to deference by the trial court under principles of

    international comity because the Spanish Courts, in arriving at their decisions, disregarded New Jersey law;

- the findings of the Spanish Courts violated New Jersey public policy on parental rights.

- in the circumstances of the proceedings, the New Jersey Trial Court's decision to limit Carrascosa's presentation of evidence did not violate her due process rights; and

- imposing a lien in the amount of $148,000 against Carrascosa in favor of Innes was not an abuse of discretion by the New Jersey Trial Court.

## DISCUSSION

Carrascosa asks the Court to reconsider its February 8, 2007 denial of her petition for a writ of habeas corpus. In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration. Bowers v. Nat'l. Collegiate Athletics Ass'n., 130 F. Supp.2d 610, 612 (D.N.J. 2001). It permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on the original motion. See NL Industries, Inc. v. Commercial Union Ins., 935 F. Supp. 513, 515 (D.N.J. 1996). The standard is high and reconsideration is to be granted only sparingly. See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).

The movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue. See Student Public Interest Research Group of N.J., Inc. v. Monsanto Co., 727 F. Supp.

5

876, 878 (1989 D.N.J.), *aff'd,* 891 F.2d 283 (3d Cir. 1989). Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision. <u>Resorts Int'l. v. Greate Bay Hotel and Casino, Inc.</u>*,* 830 F. Supp. 826, 831 & n. 3 (D.N.J. 1992). A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing. See <u>Levinson v. Regal Ware, Inc.</u>*,* 1989 WL 205724 at *3 (D.N.J. Dec. 1, 1989). Moreover, L.Civ.R. 7.1(i) does not allow parties to restate arguments which the court has already considered. See <u>G-69 v. Degnan</u>*,* 748 F. Supp. 274, 275 (D.N.J. 1990). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." <u>Tishcio v. Bontex, Inc.</u>*,* 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

  Here, Carrascosa seeks another opportunity to challenge her incarceration. Her grounds do not satisfy the threshold for granting a motion for reconsideration because she fails to show that there have been changes in controlling law, that the Court overlooked factual issues, that evidence is now available which was unavailable or undiscovered at the time of the original submissions, or that the Court made a clear error of law or fact that necessitates a different ruling in order to prevent a manifest injustice.

  There has been no change in controlling law, and Carrascosa does not argue that there has been. Neither does she argue that the evidence she now presents was unavailable or unknown at the time the Court made its determination.

  In support of her petition for writ of habeas corpus, Carrascosa submitted a very specific and detailed brief, as well as the declaration of her attorney replete with 28 exhibits, which included, *inter alia*, English translations of the decisions of the Spanish Courts, transcripts of New Jersey

Superior Court proceedings, and opinions and orders of the New Jersey Superior Court. The Court reviewed and considered her entire submission.

Her petition was opposed by Sheriff Leo P. McGuire, Respondent; Peter Innes, the plaintiff in the New Jersey Superior Court actions and intervenor here; and the Bergen County Prosecutor's Office, also an intervenor in this action. The submissions of these parties, too, were reviewed and considered by the Court. In addition, the Court heard oral argument from Carrascosa and her opponents.

The Court also reviewed and considered, among other things, the text of the Hague Convention on the Civil Aspects of International Child Abduction and its implementing regulations, ICARA, the International Child Abduction Remedies Act, as well as the legal analysis provided in the Federal Register and the Explanatory Report by Elisa Perez-Vera, the official reporter for the Hague Convention proceedings. See Elisa Perez-Vera, Explanatory Report at ¶ 32 [Madrid, April 1981]. [1] And, as noted earlier, the Court recently has read and considered the clear and well-reasoned opinion of the New Jersey Superior Court, Appellate Division, in the case of Innes v. Carrascosa which covered many of the same issues presented here and is authoritative on issues of State law.

Despite the fact that the motion for reconsideration might be dismissed on procedural grounds, in view of the importance of the issues involved the Court will consider certain of Carrascosa's contentions.

Carrascosa argues, again, that the Spanish Courts properly found that Innes did not exercise

---

[1] The Explanatory Report is available on the worldwide web at http://hcch.e-vision.nl/upload/expl28.pdf.

custody rights at the time Victoria Solenne was removed to Spain. The Court in its February 8, 2007 opinion, however, engaged in an analysis of Article 3B and determined that "the Spanish court erred in applying the custodial rights standards" because Innes had rights of custody under the laws of the State of New Jersey which he exercised until Carrascosa removed Victoria Solenne to Spain. The recent decision of the New Jersey Superior Court, Appellate Division, confirms this finding.

The Court's determination is supported further by paragraph 19 of the Perez-Vera Report which states that

> the Convention rests implicitly upon the principle that any debate on the merits of the question . . . of custody rights[,] should take place before the competent authorities in the State where the child had its habitual residence prior to its removal; this applies as much to a removal which occurred prior to any decision on custody being taken - in which case the violated custody rights were exercised *ex lege* - as to a removal in breach of a pre-existing custody decision.

The Court remains convinced that the decision of the Spanish Appellate Court departed from the mandate of the Hague Convention, under which "the forcible denial of jurisdiction ordinarily possessed by the authorities of the child's habitual residence should be avoided." The intention of the Hague Convention is to "protect *all* the ways in which custody of children can be exercised." Id. at ¶ 71 (emphasis in the original). Therefore, "the role given to the internal law of the State of refuge [is] considerably diminished." Id. at ¶ 33. The four defenses to the return of a child are to be "interpreted in a restrictive fashion if the Convention is not to become a dead letter." Id. at ¶ 34.

> [The] principle requires that the signatory States be convinced that they belong, despite their differences, to the same legal community within which the authorities of each State acknowledge that the authorities of one – those of the child's habitual residence – are . . . best placed to decide upon questions of custody and access. . . . As a result, a systematic invocation of the said exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration.   Id.

"From the Convention's standpoint, the removal of a child by one [parent] without the consent of the other is . . . wrongful" because "such action has disregarded the rights of the other parent which are also protected by law." Id. at 71.

The Lewis Declaration specifies that Article 13B was relied upon by the Spanish Courts in making their determination not to return Victoria Solenne to New Jersey because it would pose a "grave risk of harm" to her. Although that point was not developed in Carrascosa's brief, or the brief amicus curiae of the Province of Valencia, the Court will address it here because it is implicit in Exhibit G attached to Carrascosa's Memorandum of Law in Support of her motion and in the Declaration of Aurelio Marin.

It is apparent to this Court that the grave risk of harm to Victoria Solenne has been inflicted, and sustained, by Carrascosa herself. Following an examination of Victoria Solenne, the Valencia Family Court Psychological Team (the "Team") assigned to the case in Spain found that there is no risk of physical harm to Victoria Solenne were she to be returned to New Jersey, but continued separation from her father risks harm to her psychological and emotional development. They also found clear evidence that Carrascosa has manipulated Victoria Solenne by discrediting Innes through words and attitudes, thereby creating emotional instability in her. And now, Carrascosa's actions have resulted in her separation from Victoria Solenne, too, leaving the child without either parent.

Carrascosa also argues that returning Victoria Solenne would violate her human rights and fundamental freedoms, the defense available in Article 20. She and the Province of Valencia contend that Article 20 was one of the two reasons why the Spanish Courts refused to return the child to her last place of residence. They cite Article 20 as providing that: "The return of Victoria under

the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." (Amicus Brief at 12). The fundamental freedom to which the Spanish Courts referred is set forth in Chapter 2, Section 19, of the Spanish Constitution that states: "Spanish citizens have the right to freely choose their place of residence and to freely move about within the national territory." (Amicus Brief at 12-13).

According to the Perez-Vera Report, for the Spanish Courts to be able to refuse to return Victoria Solenne on the basis of Article 20, the Spanish Courts must show that "the fundamental principles of [Spain] concerning the subject matter of the Convention ***do not permit it;*** it will not be sufficient to show merely that [her] return would be incompatible, even manifestly incompatible, with these principles." See Perez-Vera Report at ¶ 118. (emphasis added). Further, the Perez-Vera Report clarifies that such principles cannot be applied to external situations more stringently than they are to internal situations. Id.

It is difficult to visualize six-year old Victoria exercising her right to travel in any meaningful way. The right, upon which the Spanish Court purportedly relied, must be viewed in the circumstances of this case. The child is being held by her grandparents. They are powerful and wealthy enough to hire eminent counsel in New Jersey and New York City and to prevail upon the Province of Valencia to retain eminent counsel in Philadelphia to appear amicus curiae on behalf of Carrascosa. All the while, in the words of the Spanish Courts' own Psychological Team: " . . . clear evidence of the child's having been manipulated by [Carrascosa] by means of attitude and utterances, in order to create a negative image of her father, thereby favouring [sic] a rejection towards him . . . [and] no evidence to point to any serious physical risk to this child if she were returned. . . .

Maintaining the child's place of abode in our country would mean a cessation of the father-child relationship . . . entail[ing] risk to the child's psycho-emotional development."

One can only speculate what the grandparents are telling the child about her father. To rely on Article 20 and the right to travel in these circumstances to avoid complying with the Hague Convention is unthinkable and certainly not a reason to reconsider the Court's earlier opinion and order.

Lastly, if there is any limitation on Victoria Solenne's right to travel, it is imposed by the Spanish Courts which confiscated and retain possession of her passports so that no one may remove her from Spain prior to her eighteenth birthday. Carrascosa argues that, as a result of this, it is impossible for her to comply with the orders of the New Jersey Courts to return Victoria Solenne.

Carrascosa cites several unsuccessful attempts of Innes to persuade the Spanish Court to lift the travel prohibition, which is opposed by Victoria Solenne's Spanish *guardian ad litem* as his "devious means" to circumvent the Hague ruling. Further, Carrascosa speculates that any attempts that she might make to accomplish release of Victoria's passport "would be viewed by the Spanish court as a product of duress and compulsion" and "as a ruse." Asserting that it would be "patently unreasonable" to force her to make "transparent efforts that are doomed to fail," Carrascosa concludes that she has made "all *reasonable* efforts," and it is simply "not possible for [her] to comply with the New Jersey order." See Petitioner's Memorandum of Law in Support of the Motion for Reconsideration at 8.

Carrascosa has not presented any evidence that she has made cogent attempts to persuade the Spanish Courts to release Victoria Solenne's passports. Thus, her assertion is unsubstantiated that, despite all her reasonable efforts, she is unable to comply with the New Jersey Court orders.

## **CONCLUSION**

There has been no change in controlling law or discovery of new evidence that was unavailable or unknown at the time the Court made its decision. Neither has the Court been persuaded that it has made a clear error of law or fact that needs to be corrected to prevent a manifest injustice. Carrascosa's motion for reconsideration will be denied. An appropriate order follows.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

Dated: May 15, 2007